[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was remanded to the trial court by the Supreme Court to assign an appropriate valuation to the defendant's pension benefits in light of the principles discussed in the decision and, thereafter, reconsider its financial orders, as necessary, so as to effectuate an appropriate distribution of the marital assets and to render appropriate orders of financial support. Krafick v. Krafick, 234 Conn. 783, 806 (1995). The original trial court recused himself from hearing the matter on remand, and the matter was then assigned to be heard by this court. The threshold issues to be decided by this court was whether there were any exceptional intervening circumstances, in the absence of which the date of the granting of the divorce would be the proper time to determine the value of the estate upon which to base the division of property. Sumbury v. Sumbury,216 Conn. 673, 583 A.2d 636 (1990). Even in the event there was an absence of exceptional intervening circumstances, the value of the defendant's pension plan would be based on the principles discussed in the remand order in this case. This court held an evidentiary hearing regarding the plaintiff's claim that there were exceptional intervening circumstances and found that there were no exceptional intervening circumstances.
In the hearing before this court, the parties stipulated that the transcript of the original hearing, as well as all the exhibits, could be considered by this court in rendering its decision. In addition, there was testimony submitted on behalf of each party as well as numerous exhibits before this court. In CT Page 6562 addition to all of the findings of fact made by the trial court in the memorandum of decision, dated November 19, 1992, this court finds the following additional facts: In accordance with the stipulation entered into between the parties, dated April 9, 1997, this court finds that the breakdown of the marriage was not caused more by one party than by the other.
The plaintiff previously had a precancerous condition on her face surgically removed. She had a benign lump removed from her breast. She also had a total hysterectomy in 1980. She has a Bachelor of Science in education.
The plaintiff's financial affidavit shows a first mortgage payment of $522.16 monthly. The first mortgage would be paid in full either in November or December of 1992.
The plaintiff's gross annual income with the City of Danbury, as of October 21, 1992, was $35,766. Her gross weekly wages was $688.10. Her net weekly wages was $486.45. Included in her deductions to arrive at her net weekly wages is a deduction of $3.75 weekly union dues and $1 weekly for United Way. There was no credible evidence that either of those were mandatory deductions, and the court has added $4.75 into her net weekly wage to arrive at a net weekly wage of $491.20.
The plaintiff's financial affidavit shows a monthly expense for school tuitions of $133.25. Part of that is for herself and part of that is for her son David. David is to graduate college in December of 1992. As of October, 1992, the monthly payment on the home equity loan of $627 is paid by the defendant and the liquor store, with the liquor store paying $500 and the defendant paying $127. The plaintiff has stocks and bonds that she owns jointly with her daughter with a total value of $396. She also has savings bonds that she holds jointly with her children and grandchildren with a total value of $1200. She owns a 1986 Chrysler with a value of $4250, and a 1980 Pontiac with a value of $675. She has $3000 at the Danbury Municipal Credit Union, $1119 at the Union Savings, $150 at Gateway Bank, $360 in stocks and bonds with the Nutmeg Federal Bank, and savings bonds of $1700. She has an IRA with Prudential with a value of $5578.51, and a second IRA with Prudential with a value of $2795.55. She has one life insurance policy with Prudential in which the defendant is the beneficiary, in the face amount of $5000, and a cash surrender value of $970.25. She has an insurance policy through PRUCO, policy #RO130335, in which the defendant is the CT Page 6563 beneficiary, in the face amount of $51,314.96, and a cash surrender value of $2693.56. She has liabilities totalling $6350.
The plaintiff has a pension plan with the City of Danbury. Its value as of October 21, 1992, based on a retirement date of November 3, 2001, is $83,324. She commenced employment with the City of Danbury on March 21, 1981. She was born on November 3, 1936. Based on her retiring on November 3, 2001, at age sixty-five, her annual pension income would be $12,364.
After the death of the plaintiff's mother, title to the Old Saybrook cottage was transferred to her mother's sister (the plaintiff's aunt), Florence Hepp. On September 19, 1973, Florence Hepp transferred title to the cottage to the plaintiff, to the plaintiff's brother, Walter Bowen, and to the plaintiff's cousin, the son of Florence Hepp, Gary Cook. As of that date, title was in three names. On May 12, 1984, Gary Cook quitclaimed his interest in the cottage to the plaintiff. The plaintiff's brother, Walter Bowen, and the plaintiff, each paid one-half of the purchase price for the interest of Gary Cook in the cottage. Each has continued to pay one-half for the repairs, maintenance and taxes. The court finds that the one-third interest that the plaintiff acquired from Gary Cook is held one-half for her own benefit and one-half for the benefit of Walter Bowen. The court finds, from all of the evidence presented, that the plaintiff and her brother, Walter Bowen, each own a one-half interest in the cottage. The total fair market value of the cottage is $135,000. The plaintiff's one-half interest amounts to $67,500.
The parties are in dispute as to the value of the package store as of November 19, 1992. The court finds that the only value to the package store as of that date consists of equipment with a fair market value of $14,000, and inventory with an approximate value of $12,900, for a total fair market value of $26,900. The package store had liabilities as of that date amounting to $14,000 to $15,000 for a net fair market value of $11,900 to $12,900.
The package store was purchased by the plaintiff and the defendant on April 9, 1987. It is known as the Hayestown Package Store and is located at 2 East Hayestown Road, Danbury, Connecticut. The purchase price was $71,999. The parties obtained a $100,000 home equity loan in 1987 to purchase the package store. The full purchase price was paid from the home equity loan, plus an additional $8000 of the home equity loan was used CT Page 6564 to purchase inventory for the store. The balance of the home equity loan was used to pay off existing debts. The home equity loan calls for interest payments only for a ten year period. Between 1987 and 1992, both the plaintiff and the defendant advanced money to the package store, as the store did not have adequate funds to pay all of its debts. The home equity loan is a second mortgage on the family residence and the interest rate is tied to the prime interest rate.
The court finds that the fair market value of the family home located at 36 Valerie Lane, Danbury, Connecticut, is $170,000. It has a first mortgage of $550, a second mortgage of $100,000, and an equity of $69,450.
The plaintiff received approximately $5500 from her mother's estate in life insurance proceeds and bank accounts that was used for renovations to the family home. The fair market value of the furniture in the home is $4560.
The defendant has a Bachelor of Science degree and has thirty additional credits. He high cholesterol and high blood pressure. He has been a teacher for thirty-five years.
The defendant's financial affidavit, dated October 21, 1992, shows gross weekly wages of $1267.17. That was calculated in part based on his teacher's contract for the school year of September, 1991 to September, 1992, and his teacher's contract for the period of September 1, 1992 to September 1, 1993. The defendant took his gross income based on those two school year contracts for the period of January 1, 1992 through December 31, 1992, and determined what his annual income was for that twelve month period, and divided it by twelve. Based on his school contract for the period of September 1, 1992 to September 1, 1993, his gross weekly income is $1320.96, less deductions. The court is using $1320.96 less deductions for the purposes of various financial orders hereinafter entered. The defendant's financial affidavit shows deductions for school dues of $7.67 weekly and credit union of $50. The court is disallowing those two deductions. The court is therefore using a net weekly wages from employment for the defendant of $894. The defendant also has wages from working as the night dispatcher at Hoffman Fuel of $197.68 gross and $149.81 net. His credit union weekly deduction of $50 goes towards a credit union savings plan that he has. He has $1100 in that federal credit union. Included in his deductions from his Hoffman Fuel job is $9.37 weekly toward a CT Page 6565 401K plan. That 401K plan is shown on his financial affidavit on page 6 under the name of Champion Energy Corporation and has a value as of October 21, 1992 of $33,531.58. The source of his 401K plan account is from Chevron stock. The defendant has a number of life insurance policies. One of them is with Prudential Bache in the face amount of $50,000 with the plaintiff as beneficiary. This is policy No. RO130333. The defendant owns this policy. There is another life insurance policy with Prudential Bache, policy No. RO130335, in which the defendant is the insured. The plaintiff owns that policy. The defendant owns policy RO130335. The defendant shows various liabilities under his financial affidavit. He has a liability to Bank of Boston that was incurred in 1987 with a balance of $17,000. Approximately $10,000 of that liability was incurred for college expenses for Christine Krafick, one of the children of the parties. He also has a liability for orthodontist for Christine that was incurred in 1988 with a balance of $2200. He owes the accountant $800. No payment has been made to the orthodontist since August of 1992. The defendant believes that the orthodontist did not properly do the work that he was retained to perform. The defendant's financial affidavit also shows a Village Savings Bank loan of $5000 as well as a Chemical Bank boat loan $11,000. The defendant has claimed this $11,000 both under his liabilities as well as under his assets where he reduces the $13,000 fair market value of the boat by the $11,000 loan to an equity of $2000. He also owes Citybank $3000, VISA $4000 and American Express $400.
His VISA $4000 balance as well as his American Express $400 balance were each incurred after the parties separated.
He owns a 1987 Dodge with a value of $2000. He owns a 19 foot Cutty cabin boat with a fair market value of $13,000 and loan of $11,000 and an equity of $2000.
He has miscellaneous PRUCO IRA's with a value of $5000.
The defendant shows under retirement plans Bedford Board of Education with an estimated value of $16,200. Pension benefits represent a form of deferred compensation for services rendered. In the event he would retire in November of 1992, he would receive approximately $16,200. The amount of the award is tied in to his final year salary in the year he retires.
When the defendant retired, the amount that he received was CT Page 6566 $20,600. The court considers that amount to be a form of deferred compensation and as such is a pension benefit. The court is using the reserve jurisdiction method to distribute that pension and is therefore using the $20,600 value.
The defendant was born August 26, 1936. The defendant retired on February 1, 1994 from his New York State teaching position. His current pension income, based on retiring on February 1, 1994, is $42,756 annually. When he retired he elected to receive the maximum income option he could receive. If he had elected a survivorship option, his annual pension income would have been $36,000. In the event the defendant had exercised the option to take a joint and survivor benefit under option 3 of his retirement plan, and the plaintiff survived him, she would then have received an annual retirement income for the rest of her life of $19,540. The defendant relies in part on the Retirement Equity Act of 1984 in arguing that the defendant should have elected a joint and survivor option. The short answer to that argument is that the Retirement Equity Act of 1984 does not apply to the defendant's pension plan. The plaintiff claims that in order to now have the benefit of an annual life annuity of $19,540, that the defendant should maintain life insurance on his life in the amount of $300,554. This is based on the assumption that the plaintiff will outlive the defendant by eighteen years. There was no credible testimony to substantiate that testimony. Another claim of the plaintiff is that the defendant should maintain a $207,000 in order to provide for the eighteen year payout. Once again, there is no credible evidence that the plaintiff would outlive the defendant by eighteen years. Furthermore, no credible evidence has been presented regarding the issue of whether the defendant is insurable. The defendant's present annual pension income is $42,756. In the event he had elected a 50 percent joint and survivorship option, his annual pension income would be $39,080 or a difference of $3676. The value of the defendant's New York State pension plan, as of October 6, 1992, was $420,981. His annual retirement income, as of October 6, 1992, would be $36,500. The value of his New York State pension plan, as of February 1, 1994, is $493,003.
The defendant also has a pension plan through Chevron which pays him $94.75 monthly for life.
In remanding this case, the Krafick court outlined various methods which the trial court can use in valuating pension plans. This court has elected to use the "reserved jurisdiction" method CT Page 6567 for valuing and distributing the defendant's New York State pension. Under that method, the value of the defendant's pension plan as of the date he retired was $493,003. This court has elected to use the "present division" method for valuing and distributing the plaintiff's pension with the City of Danbury.
This court has considered the provisions of § 46b-82
regarding the issues of alimony, and has considered the provisions of § 46b-81 (c) regarding the issues of property division, and has considered the provisions of § 46b-62
regarding the issue of attorney's fees. The court enters the following orders:
A. BY WAY OF ALIMONY
1. The defendant is ordered to pay to the plaintiff alimony in the sum of $300 per week.
2. Alimony is to terminate on the earliest event: (a) the death of the plaintiff; (b) the death of the defendant; (c) the remarriage of the plaintiff.
3. The provisions of §§ 46b-86 (a) and 46b-86 (b) are applicable.
B. BY WAY OF PROPERTY ORDERS
1. The PRUCO insurance policy #RO130335, in which the defendant is the named insured, is transferred to the plaintiff as well as the cash surrender value therein as of November 19, 1992. The plaintiff has the right to maintain said policy on the defendant's life provided she pays the premiums therein. The Prudential Bache life insurance policy #130333, in which the plaintiff is a named insured, is ordered transferred to the defendant. The cash surrender value in said policy, as of November 19, 1992, is also assigned to the defendant. The defendant has the right to maintain said policy on the plaintiff's life provided he pays the premium therein. All remaining life insurance policies shown on the plaintiff's financial affidavit are awarded to the plaintiff. All remaining life insurance policies shown on the defendant's financial affidavit are awarded to the defendant.
2. The defendant is to pay all liabilities shown on his financial affidavit and hold the plaintiff harmless therefrom. CT Page 6568
3. The plaintiff is to pay all liabilities shown on her financial affidavit and hold the defendant harmless therefrom.
4. All furniture, furnishings, tools, jewelry, art and antiques in the possession of the plaintiff are awarded to the plaintiff, except for the two power saws, hedge clipper and one bicycle which are awarded to the defendant. In the event those items are located by the plaintiff, she is to notify the defendant. All furniture and furnishings and jewelry in the possession of the defendant are awarded to the defendant.
5. All of the defendant's interest in the family residence at 36 Valerie Lane, Danbury, Connecticut, is awarded to the plaintiff. The defendant is to execute a quitclaim deed for such interest. The plaintiff is to pay the first mortgage and the home equity loan and hold the defendant harmless therefrom.
6. All of the defendant's interest in Hayestown Package Store is awarded to the plaintiff. She is to pay all liabilities in connection thereto and hold the defendant harmless. The defendant is to execute whatever documents are necessary to transfer title into her name. The court retains jurisdiction over any disputes as to the language of the documents necessary.
7. All of the plaintiff's interest in the Old Saybrook, Connecticut cottage, is awarded to the plaintiff.
8. All of the plaintiff's interest in the stocks and bonds held by the plaintiff with her daughter at Nutmeg Federal Bank are awarded to the plaintiff.
9. All of the plaintiff's interest in the savings bonds held jointly with her children and grandchildren are awarded to the plaintiff.
10. The 1986 Chrysler and the 1980 Pontiac are both awarded to the plaintiff.
11. The savings account at the Danbury Municipal Credit Union, shown on the plaintiff's financial affidavit, is awarded to the plaintiff.
12. The Union Savings account, shown on the plaintiff's financial affidavit, is awarded to the plaintiff. CT Page 6569
13. The Gateway Bank account, shown on the plaintiff's financial affidavit, is awarded to the plaintiff.
14. The stocks and bonds held by the plaintiff with Nutmeg Federal Bank are all awarded to the plaintiff.
15. The savings bonds owned by the plaintiff as shown on her financial affidavit are all awarded to the plaintiff.
16. The plaintiff's interest in her pension plan with the City of Danbury is ordered divided equally between the parties upon maturity. The defendant is responsible for preparing the necessary documents. The court retains jurisdiction over any disputes that may exist regarding such documents.
17. All of the plaintiff's interest in the two IRA-Prudential retirement plans totalling $8374.06, as shown on her financial affidavit, are awarded to the plaintiff.
18. All of the defendant's interest in the federal credit union account, shown on his financial affidavit, is awarded to the defendant.
19. The 1987 Dodge Ram truck, shown on the defendant's financial affidavit, is awarded to the defendant.
20. The 1989 Larsen Sound 19 foot Cutty cabin is awarded to the defendant. He is to pay the loan thereon and hold the plaintiff harmless therefrom.
21. All the defendant's interest in the Bedford Board of Education pension in the amount of $20,600 is awarded to the defendant.
22. All of the defendant's interest in the 401K Champion Energy Corporation, shown on his financial affidavit, is awarded to the defendant.
23. All of the defendant's interest in his miscellaneous PRUCO IRA's, with an estimated value of $5000, is awarded to the defendant.
24. The defendant's interest in his New York Teachers' Retirement System is ordered divided 62 percent to the defendant CT Page 6570 and 38 percent to the plaintiff. The reason the court has not awarded the plaintiff 50 percent interest in this plan is in order to approximately equalize the equity in all of the assets transferred to the parties. This division of 38 percent to the plaintiff is ordered effective February 1, 1994. She is to declare all of the retroactive amounts that she receives for federal and state income tax purposes. Thirty-eight (38) percent of $42,756 is $16,247.28 annually. The arrearage for three years from February 1, 1994 to February 1, 1997 amounts to $48,741.84. The arrearage for the months of February, 1994 through May, 1994 (four months) amounts to $5415.76 for a total arrearage of $54,157.60. The court orders that that arrearage be paid at the rate of $800 per month, without interest, commencing August 1, 1997, and monthly thereafter. In the event the defendant is more than fifteen days late in making any monthly payments, then interest on the full unpaid balance will run at the rate of 10 percent per annum. Counsel for the defendant is to prepare the required stipulation in accordance with the stipulation attached to the defendant's "brief and claims for relief dated April 25, 1997," and forward the stipulation to counsel for the plaintiff who in turn is to arrange for the plaintiff to execute the stipulation, and the stipulation is then to be returned to counsel for the defendant for filing with the New York Teachers' Retirement System. The court retains jurisdiction over any language that may be required in order for the order of this court to be acceptable to New York State.
25. The defendant's interest in the Chevron pension plan is ordered divided equally between the parties upon maturity. The plaintiff is responsible for preparing the necessary documents. The court retains jurisdiction over any disputes that may exist regarding that document.
C. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
D. MISCELLANEOUS ORDERS
1. The defendant is to prepare the judgment file within thirty days and send it to counsel for the plaintiff for signature and filing.
2. Each party is to exchange copies of their federal and state income tax returns within thirty days after such returns CT Page 6571 have been filed by registered mail, return receipt, or certified mail, return receipt, for so long as there is an outstanding alimony order.
Axelrod, J.